**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **BENTON BENALCAZAR, et al.,** : | |
| : | Case No. 2:18-cv-01805 |
| **Plaintiffs,** : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | Magistrate Judge Deavers |
| **GENOA TOWNSHIP, OHIO** : | |
| : | |
| : | |
| **Defendant.** : | |

**OPINION & ORDER**

**I. INTRODUCTION**

This matter is before the Court on Movants/Intervenors GTRRD, Inc. and Luke and Janine Schroeder's Motion to Dismiss. Doc. 52. The Court permitted the Movants to intervene in this case for the limited purpose of challenging the sufficiency of Plaintiffs' Complaint.

Also pending before the Court is Plaintiffs and Defendant's Joint Motion for Approval of Consent Decree. Doc. 38. The Court will resolve these Motions without a hearing due to the COVID-19 pandemic. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Intervenors' Motion to Dismiss [#52] and **GRANTS** the Joint Motion for Approval of Consent Decree [#38].

**II. BACKGROUND**

Plaintiffs Benton and Katherine Benalcazar own property located in Genoa Township, Ohio. Their property consists of approximately forty-three acres of land. On April 9, 2018, the Genoa Township Board of Trustees approved Plaintiffs' application to re-zone their property from

1

a Rural Residential property to a Planned Residential Development.[1]  The Board also approved Plaintiffs' preliminary development plan for their property, which proposed the construction of sixty-four single family homes.

After the Trustees approved Plaintiffs' application to re-zone their property, members of the public circulated a petition, seeking a referendum under Ohio Revised Code § 519.12(H) to restore Plaintiffs' property to its original Rural Residential zoning designation.  This referendum made its way onto the November 2018 ballot and passed by a majority vote.  Consequently, Plaintiffs' property was never re-zoned to a Planned Residential Development.

Following the November 2018 vote, Plaintiffs filed this action against Defendant Genoa Township, Ohio, asserting two causes of action: (1) Deprivation of Property and Liberty Interests Without Due Process of Law, in violation of 42 U.S.C. § 1983; and (2) Unequal Protection of the Law, in violation of 42 U.S.C. § 1983.  Plaintiffs also sought a Declaratory Judgment that subjecting their property to a Rural Residential zoning designation was unconstitutional.  On June 17, 2019, the parties participated in a lengthy mediation, with settlement discussions continuing for several months thereafter.  This resulted in the parties filing a Proposed Consent Decree pursuant to O.R.C. 505.07 which, if approved by the Court, would re-zone Plaintiffs' property to a Planned Residential Development over the objections of the referendum voters.

Movants have now intervened in this action to challenge the sufficiency of Plaintiffs' Complaint, claiming no actual case or controversy exists and that this suit is merely an attempt to supplant the will of the voters.

---

[1] Under O.R.C. § 519.12(H), Plaintiff's zoning change would become effective after thirty days, unless challenged by a voter petition.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b) provides for the dismissal of a complaint for, among other things, lack of subject-matter jurisdiction and a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1) & (6). To survive a motion to dismiss for a failure to state a claim, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). And although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

### IV. ANALYSIS

Intervenors move to dismiss Plaintiffs' Complaint for a lack of subject-matter jurisdiction and a failure to state a claim upon which relief can be granted. The Court will address each ground for dismissal, in turn, below.

#### A. Whether the Court has Subject-Matter Jurisdiction

As a threshold matter, it appears Intervenors challenge whether Plaintiffs have standing to bring the claims alleged in their Complaint. To establish standing, a plaintiff must satisfy three elements: "(1) an injury in fact that is concrete and particularized; (2) a connection between the injury and the conduct at issue—the injury must be fairly traceable to the defendant's action; and (3) [a] likelihood that the injury would be redressed by a favorable decision of the Court."

*Courtney v. Smith*, 297 F.3d 455, 459 (6th Cir. 2002) (quoting *Blachy v. Butcher*, 221 F.3d 896, 909 (6th Cir. 2000)). These elements are easily satisfied here.

First, Plaintiffs assert that they have been injured by their inability to develop their property under current zoning restrictions. Second, this injury is the result of Defendant, through the voter referendum, maintaining Plaintiff's property as a Rural Residential property. *See City of Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 678 (1976) ("A referendum . . . is the city itself legislating through its voters an exercise by the voters of their traditional right through direct legislation to override the views of their elected representatives as to what serves the public interest."). Third, the Court could redress this injury by approving the parties' Proposed Consent Decree, which would remove any impediments to the development of Plaintiffs' property.

Additionally, the Court has subject-matter jurisdiction over this § 1983 action pursuant to 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") and 28 U.S.C. § 1343(a)(3) ("The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States[.]"). Intervenors' arguments to the contrary are, therefore, without merit.

### B. Whether Plaintiffs have Stated a Cognizable Claim

Alternatively, Intervenors argue that the Court should dismiss Plaintiffs' Complaint for a failure to state a claim upon which relief can be granted. First, Intervenors contend that Plaintiffs have no constitutionally protected property interest in the development that they seek, and further,

4

have not been denied due process under the law. Second, Intervenors maintain that Plaintiffs have not been subjected to unequal treatment under the law. Finally, Intervenors assert that rendering a declaratory judgment would be an inappropriate use of the Court's discretion. The Court will address each of these arguments, in turn, below.

1. Plaintiffs' Due Process Claim (Count One)

First, Intervenors, relying on the Sixth Circuit's opinion in *Kenney v. Blackwell*, argue that Plaintiffs' due process claim must be dismissed because they have no protected property interest in having their property re-zoned from a Rural Residential property to a Planned Residential Development. 2000 WL 977368, at *3 (6th Cir. July 7, 2000) ("[W]e affirm the district court's finding that Kenney did not have a protected property interest in his requested zoning amendment to support a due process claim."). Plaintiffs concede that they have no protected property interest in a particular zoning classification; rather, Plaintiffs argue that the protected property interest at issue is the right to develop their property free from current zoning restrictions. In other words, Plaintiffs maintain that they, as owners of their property, have a protected interest in the land itself. But even framing the matter in this way, Plaintiffs must still establish that Genoa Township and/or the voters lacked the discretion to deny Plaintiffs the ability to develop their land. *See J-II Enters., LLC v. Bd. of Comm'rs of Warren Cty., Ohio*, 135 F. App'x 804, 807 (6th Cir. 2005) ("[L]and owners have no constitutionally protected interest in developing their land unless zoning authorities lack discretion to deny the land owners permission to develop the land.").

To state a substantive due process claim in the context of zoning regulations, "a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists and (2) that constitutionally protected interest has been deprived through arbitrary and capricious action." *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 747 (6th Cir. 2002). The Sixth Circuit applies an

5

"entitlement test" to determine whether an alleged property right is protected by the Fourteenth Amendment. *Wedgewood Ltd. P'ship I. v. Twp. of Liberty, Ohio*, 456 F. Supp. 2d 904, 931 (S.D. Ohio) (Marbley, J.) (citing *Andreano v. City of Westlake*, 2005 WL 1506049, at *5 (6th Cir. June 23, 2005)). Under that test, a protectable property right exists only if a plaintiff has a "legitimate claim of entitlement" or "justifiable expectation" in the approval of their development plan. *Id.* (citing *Triomphe Invs. v. City of Northwood*, 49 F.3d 198, 202-03 (6th Cir. 1995)). Hence, if Genoa Township has the discretionary authority to approve or deny Plaintiffs the right to develop their property, then Plaintiffs would not have a constitutionally protected property interest in the development of their land. *See Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) ("If the Board had the discretion to deny Silver a conditional zoning certificate for a condominium complex even if he complied with certain minimum, mandatory requirements, then Silver would not have a 'legitimate claim of entitlement' or a 'justifiable expectation' in the approval of his plan.").

Under the Genoa Township Zoning Resolution, the Board of Trustees has the discretion to approve or deny a request to re-zone property which, in turn, determines whether a piece of land can be developed:

> Pursuant to Ohio Revised Code Section 519.021(A), this District may be permitted upon application and approval of specific and detailed Final Development Plans and all shall require amendments to the official Zoning Map. Approval for Planned Development rezoning applications ***may be granted*** pursuant to ORC 519.12 only when the plan for the project complies with these regulations and promotes the general public health, safety, morals, and welfare and encourages the efficient use of land and resources, promotes greater efficiency in providing public and utility services and encourages innovation in the planning and building of the development.

Doc. 58 at 181 (Genoa Township Zoning Resolution, Article IX) (emphasis added). Furthermore, even where the Board approves a re-zoning request, Ohio law grants the Township's electorate the discretion to override the Board's decision:

6

> The proposed amendment, if adopted by the board, shall become effective in thirty days after the date of its adoption, unless within thirty days after the adoption, there is presented to the board of township trustees a petition, signed by a number of registered electors residing in the unincorporated area of the township or part of that unincorporated area included in the zoning plan equal to not less than eight percent of the total vote cast for all candidates for governor in that area at the most recent general election at which a governor was elected, requesting the board of township trustees to submit the amendment to the electors of that area for approval or rejection at a special election to be held on the day of the next primary or general election that occurs at least ninety days after the petition is filed.
>
> . . .
>
> No amendment for which such a referendum vote has been requested shall be put into effect unless a majority of the vote cast on the issue is in favor of the amendment.

O.R.C. § 519.12(H).

Here, given that the Board of Trustees and the Township's electorate have the discretion to approve or deny a re-zoning request, Plaintiffs have no constitutionally protected property interest in the development of their land. *See Kenney*, 2000 WL 977368 at *3 (affirming district court's finding that "while Kenney had a right to petition for an amendment, he had no entitlement to that amendment since it was subject to a referendum under Ohio Rev. Code. § 519.12(H)"). Nor does the prior approval of Plaintiffs' preliminary development plan give them a protected property interest in the development of their land, as their plan was contingent upon their property being re-zoned to a Planned Residential Development. *See* O.R.C. § 519.021(A). Accordingly, Count One of Plaintiffs' Complaint is **DISMISSED** for a failure to state a claim upon which relief can be granted.

### 2. Plaintiffs' Equal Protection Claim (Count Two)

Next, Intervenors contend that Plaintiffs' Equal Protection claim must be dismissed because all property owners seeking zoning amendments face the possibility of a referendum vote under O.R.C. § 519.12(H).

7

The Equal Protection Clause "safeguards against the disparate treatment of similarly situated individuals as a result of government action that either burdens a fundamental right, targets a suspect class, or has no rational basis." *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 649 (6th Cir. 2015) (internal quotations and citation omitted). A class-of-one Equal Protection claim, such as asserted here, is premised on the theory that Plaintiffs, due to animus, were treated differently than similarly situated individuals. *See id.* at 649-50. To succeed on this type of claim, Plaintiffs must allege either (1) disparate treatment from similarly situated individuals with no rational basis for the difference, or (2) that the challenged conduct was motivated by animus or ill-will. *Id.* at 650. Plaintiffs are proceeding under both theories.

First, Plaintiffs claim that they were treated differently than similarly situated landowners without a rational basis. Notably, Genoa Township has rezoned nearly 100 properties to Planned Residential Developments. As four examples, Plaintiffs assert that Courtyards on Maxtown was rezoned from a Rural Residential property to Planned Residential Development with a net density of 3.12 units per net acre, that Courtyards on Tussic was rezoned with a net density of 4.75 units per net acre, that Villas at Tussic was rezoned with a net density of 4.53 units per net acre, and that Hawk's Nest at the Highland Lakes subdivision was rezoned with a net density of 1.95 units per net acre. By comparison, Plaintiffs' development plan calls for only 1.89 units per net acre. *See Stebelton v. Bloom Twp. Bd. of Zoning Appeals*, 2010 WL 1629868, at *4 (S.D. Ohio Apr. 21, 2010) (Marbley, J.) (finding allegations that plaintiffs were "singled out for adverse treatment" and that "other, similarly situated people were treated more fairly" are sufficient to survive a motion to dismiss); *Oberer Land Developers, Ltd. v. Sugarcreek Twp., Ohio*, 2020 WL 1466184, at *8 (S.D. Ohio Mar. 26, 2020) (holding the determination of whether comparators are similarly situated is "better addressed in a summary judgment motion where all relevant evidence

concerning the circumstances surrounding the Township's approval of these other developments can be considered").

Notwithstanding the above, Intervenors suggest that these other properties do not provide an adequate comparison because, unlike Plaintiffs' property, the voters never pursued a referendum against those properties. Stated differently, Intervenors argue that the properties cannot be compared because different decision makers were involved in the ultimate zoning decisions. In making this argument, however, Intervenors lend support to Plaintiffs' point. Indeed, if all property owners seeking zoning amendments face the possibility of a referendum vote, and the voters pursued a referendum against Plaintiffs but not the other similarly situated property owners, therein lies a genuine issue as to whether Plaintiffs were treated differently without a rational basis.

Alternatively, Intervenors argue that even if Plaintiffs were treated differently, the voters had a rational basis for denying Plaintiffs' re-zoning request, as evidenced by the various concerns expressed at public meetings. But this argument goes to the merits of Plaintiffs' claims, which is not appropriate at the motion to dismiss stage. *See id.* ("[A]ny argument regarding the merits of the Plaintiffs' equal protection claim is not appropriate until the summary judgment stage."). At issue here is whether Plaintiffs' have pled a cognizable Equal Protection claim. Plaintiffs have met that minimal burden.

As a second ground for their Equal Protection claim, Plaintiffs contend that the result of the voter referendum was motivated by racial animus, evidenced by referendum proponents referring to Mr. Benalcazar, who is of Arab descent, as "Mr. Benghazi," and painting Plaintiffs as outsiders, despite them having lived in the community for seventeen years. *See United States v. City of Birmingham, Mich.*, 538 F. Supp. 819, 828 (E.D. Mich. 1982) ("[W]hen the referendum

has been conducted, we may examine the motivation of the electorate in order to determine whether a city has acted out of racially discriminatory motives."). In response, Intervenors argue that the discriminatory comments of a few cannot be imputed on all voters. *See id.* ("A city cannot be found to have intended to discriminate unless it can be shown that racial considerations were a motivating factor among a significant percentage of those who were responsible for the city's conduct."). But again, this argument goes to the merits of Plaintiffs' claim and would be premature to resolve without adequate discovery exploring whether this racial animus was widespread. Accordingly, Count Two of Plaintiffs' Complaint survives dismissal.

### 3. Plaintiffs' Request for a Declaratory Judgment (Count Three)

Finally, in Count Three of the Complaint, Plaintiffs request a Declaratory Judgment stating: (1) that re-zoning Plaintiffs' property from a Rural Residential property to a Planned Residential District and approving Plaintiffs' development plan is constitutional, reasonable, and substantially related to public health, safety, morals, and general welfare; and (2) that subjecting Plaintiffs' property to a Rural Residential zoning classification is unconstitutional, unreasonable, and/or not substantially related to the public health, safety, morals, or general welfare. Intervenors move for the dismissal of this request, arguing that it would be inappropriate for the Court to reach these constitutional issues.

28 U.S.C. § 2201(a) provides that in "a case of actual controversy within its jurisdiction" a federal court "may declare the rights and other legal relations of any interested party seeking such declaration[.]" The Sixth Circuit has set forth general principles regarding whether a declaratory ruling is appropriate: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; and (2) when it will terminate and afford relief from the

uncertainty, insecurity, and controversy giving rise to the proceeding. *Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

Here, the Court finds that Plaintiffs' request for a Declaratory Judgment is inappropriate. With respect to Plaintiffs' first request -- a declaration that re-zoning their property to a Planned Residential Development is constitutional -- this is not an issue that is actually in dispute. The question in this case is not whether it would be constitutionally permissible to re-zone Plaintiffs' property to a Planned Residential Development; rather, the pertinent question is whether the referendum voters violated Plaintiffs' Fourteenth Amendment Equal Protection rights by preventing this from occurring.

Regarding Plaintiffs' second request -- a declaration that subjecting Plaintiffs' property to a Rural Residential zoning classification is unconstitutional -- there is an alternative remedy available that is better and more effective: Granting the Joint Motion for Approval of Consent Decree, which would re-zone Plaintiffs' property to a Planned Residential Development. *See id.* ("Courts deny declaratory relief if an alternative remedy is better or more effective."). Accordingly, Count Three of Plaintiffs' Complaint is **DISMISSED**.

### C. Whether the Proposed Consent Decree is Fair and Reasonable

Having found that Plaintiffs' Complaint states at least one claim upon which relief can be granted, the Joint Motion for Approval of Consent Decree is now ripe for review. Pursuant to O.R.C. § 505.07, the Ohio General Assembly expressly authorized townships to settle court actions by a consent decree or court-approved settlement agreement -- notwithstanding a voter referendum -- which may include an agreement to re-zone the property involved in the action and the approval of a development plan:

> Notwithstanding any contrary provision in another section of the Revised Code, section 519.12 of the Revised Code, or any vote of the electors on a petition for zoning

11

referendum, a township may settle any court action by a consent decree or court-approved settlement agreement which may include an agreement to rezone any property involved in the action as provided in the decree or court-approved settlement agreement without following the procedures in section 519.12 of the Revised Code and also may include township approval of a development plan for any property involved in the action as provided in the decree or court-approved settlement agreement, provided that the court makes specific findings of fact that notice has been properly made pursuant to this section and the consent decree or court-approved settlement agreement is fair and reasonable.

If the subject of the consent decree or court-approved settlement agreement involves a zoning issue subject to referendum under section 519.12 of the Revised Code, the board of township trustees shall publish notice of their intent to meet and consider and take action on the decree or court-approved settlement agreement and the date and time of the meeting in a newspaper of general circulation in the township at least fifteen days before the meeting. The board shall permit members of the public to express their objections to the consent decree or court-approved settlement agreement at the meeting. Copies of the proposed consent decree or court-approved settlement agreement shall be available to the public at the township fiscal officer's office during normal business hours.

At least ten days prior to the submission of a proposed consent decree or settlement agreement to the court for its review and consideration, the plaintiff in the action involving the consent decree or settlement agreement shall publish a notice that shall include the caption of the case, the case number, and the court in which the consent decree or settlement agreement will be filed, the intention of the parties in the action to file a consent decree or settlement agreement, and, when applicable, a description of the real property involved and the proposed change in zoning or permitted use, in a newspaper of general circulation in the township.

O.R.C. § 505.07.

Based on the above language, the Court must make the following factual findings before approving the Proposed Consent Decree:

1) The Board of Trustees published sufficient notice of its intent to meet, consider, and take action on the Consent Decree at least fifteen days before the meeting;

2) Plaintiffs published sufficient notice at least ten days prior to the submission of the Consent Decree for this Court's review and consideration; and

3) The Consent Decree is fair and reasonable.

*See id.* Each of these conditions have been satisfied here.

First, the Genoa Township Board of Trustees published notice in the Delaware Gazette of their December 16, 2019 Special Meeting to Consider the Proposed Consent Decree at least fifteen days before this meeting. *See* Doc. 38-4 (Notice of Special Meeting -- November 23, 2019). At this meeting, members of the public were permitted to express their objections to the Proposed Consent Decree. *See* Doc. 38-3 (Genoa Township Special Meeting Transcript -- December 16, 2019). Second, Plaintiffs published notice in the Delaware Gazette of the intention of the parties to file a Proposed Consent Decree with this Court at least ten days before doing so on January 17, 2020. *See* Doc. 38-18 (Notice of Intent to Submit Proposed Consent Decree -- January 3, 2020). This notice included a description of the property and the proposed zoning change. *See id.* Finally, the Court finds that the Proposed Consent Decree is fair and reasonable. The Proposed Consent Decree would re-zone Plaintiffs' property to a Planned Residential Development and approve their final development plan, while also avoiding the cost of engaging in lengthy discovery, motion practice, and potentially trial. Moreover, each party was represented by counsel who attest that the agreement is fair and reasonable and was the result of mediation and arm's-length settlement discussions. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007) (finding the opinion of counsel that "the proposed settlement is fair, reasonable, and adequate is entitled to considerable weight"). Accordingly, the Court **GRANTS** the Joint Motion for Approval of Consent Decree.

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Intervenors' Motion to Dismiss [#52]. Counts One and Three of the Complaint are hereby **DISMISSED**. Additionally, the Court **GRANTS** the Joint Motion for Approval of Consent Decree [#38]. Finally, the Court **DENIES** Plaintiffs' Motion for Leave to File a Sur-Reply to the Motion to Dismiss [#59] as **MOOT**. This case is now resolved in its entirety pursuant to the

13

approved Consent Decree.  The Court, however, will retain jurisdiction of this action for purposes of monitoring compliance with the Consent Decree and entry of further Orders as may be necessary or appropriate.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 24, 2020**